## WINTER v. EMPLOYERS FIRE INSURANCE CO.
No. 66620.

Civil Court of Record, Duval County.

March 22, 1962.

Neal D. Evans, Jr., of Evans, Stewart & Proctor, Jacksonville, for plaintiff.

Dwight E. Ogier of Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for defendant.

TYRIE A. BOYER, Judge.

This cause was heard on the motions for summary judgments filed by each of the parties. The essential point to be determined is the meaning of the phrase "within the limits of the continental United States of America". Upon first blush it would appear that the term "continental limits of the United States of America" should be susceptible of immediate determination. However the attorneys for the respective parties have been unable to furnish the court with a citation of any case in which the term has been defined and an exhaustive independent research has revealed none.

Before undertaking to define the limits of the continental United States it is appropriate to consider the manner in which the point has arisen. On September 15, 1960, the defendant issued to the plaintiff a policy of insurance containing an endorsement insuring a certain outboard motor and boat owned by the plaintiff. The endorsement contained, under the heading "Conditions", the following provision—"The insurance afforded by this endorsement applies only within the limits of the continental United States of America, and Canada, unless otherwise endorsed hereon".

According to the complaint and the affidavit in support of the plaintiff's motion for summary judgment and the deposition of the plaintiff filed herein, the insured boat was involved in an accident on June 17, 1961, resulting in a majority of the craft becoming submerged, thus giving rise to the loss which is the subject matter of this suit. At the time of the accident the plaintiff was returning from West End in the Bahama Islands and was en route to the Lake Worth Inlet, which is at West Palm Beach, Florida. After the accident the plaintiff's craft was picked up by a tanker owned by Sinclair Refining Company and taken to that ship's destination in Houston, Texas. In due course the plaintiff made claim under his policy of insurance and upon the claim being denied by the insuror this suit was commenced. To the complaint filed herein, the defendant filed an answer containing, among other things, an affirmative defense based upon the condition above quoted and asserting that at the time of the accident the boat was being operated outside the limits of the continental United States of America.

In due course, as a result of the filing of various motions, this court was called upon to construe and interpret the provision of the policy above quoted, whereupon the court announced in its order dated February 23, 1962, that the subject provision would be interpreted to afford insurance coverage to the insured for any *losses* which occurred in the continental United States of

America and Canada, regardless of the place of the happening of the incident which may have ultimately culminated in such losses. The court specifically refrained from deciding whether the subject accident occurred within the limits of the continental United States and Canada for the reason that there was no evidence before the court at that time on which to make such determination. The construction placed upon said provision by the court in its said prior order is hereby confirmed. Since the entry of said prior order this court has examined numerous policies of insurance which contain a similar provision but each of such provisions are so worded that it is specifically provided that coverage is afforded only as to losses which result from accidents occurring in the continental limits of the United States or Canada. If such had been the intent of the defendant insurance company in the case at bar it would have been a simple matter to have so stated.

Subsequent to the date of the order above referred to, each party filed herein a motion for summary judgment. There appears in the file, in addition to the pleadings, a deposition of the plaintiff and an affidavit of the plaintiff filed in support of his motion for summary judgment. There are no opposing affidavits filed on behalf of the defendant. The plaintiff's affidavit alleges that at the time of the accident giving rise to this controversy the plaintiff's boat was being operated "in closer proximity to the coast of the United States than to the coast of any foreign country and was being operated between West End in the Bahamas and West Palm Beach, Florida; that the distance between said two ports is approximately 42 miles." Plaintiff states in his deposition that he had traveled 28 or 30 miles from West End toward Florida when the accident occurred. At the hearing the parties stipulated that the accident occurred within the confines of the continental shelf of the continent of North America, but the defendant's attorney specifically denied that the extent of the continental shelf was material to the issues. The parties also stipulated that the court could and should take judicial notice of the location and confines of the limits of the continental United States.

Thus, as stated at the outset, the point to be determined by the court at this time, is whether or not the accident giving rise to this controversy occurred "within the limits of the continental United States of America." An exhaustive research reveals that the term "continental United States of America" has never been defined by any appellate court in the United States in any case factually similar to the case at bar. The defendant has cited §1711, title 42 U.S.C.A., which defines the term "continental United States" as meaning the states and the District of Co-

lumbia. However that section, which pertains to the public health and welfare, specifically provides that the definitions therein contained shall apply when used in that chapter. A definition of the term "continental United States" may also be found in various other sections and chapters of the United States Code but in each instance the definition is different and by specific provision applies only to the particular chapter in which the definition is contained. It appears to be a prevalent belief that the boundaries of the United States extend three nautical miles seaward from the coast of our coastal states. However an examination of Article I of the constitution of the state of Florida reveals that the eastern boundaries of the state of Florida, as therein defined, extend from a point at which the middle of the St. Mary's River runs into the Atlantic Ocean "southeastwardly along the coast to the edge of the gulf stream". Thus it would appear that the boundary of the eastern portion of the state extends only to the coast. However the constitution specifically provides that the western boundary is three leagues from the mainland. One boundary referred to in the constitution is the edge of the gulf stream. It is pertinent to note in passing that the maps compiled and printed by the United States Department of Commerce reveal that the axis of the gulf stream is approximately 90 miles east of the city of Jacksonville, Florida, and it runs approximately one-half way between Grand Bahama Island and the coast of Florida.

Webster's New Collegiate Dictionary, copyright 1961, defines a league as follows—"A measure of distance varying for different times and countries from about 2.4 to 4.6 miles." Black's Law Dictionary, Fourth Edition, states—"the marine league, marking the limit of national jurisdiction on the high seas, is equivocal to 3 geographical (or marine) miles of 6,075 feet each."

Interesting as it may be however, a determination of the boundary of the state of Florida, though perhaps helpful, does not appear to be determinative of the "limits of the continental United States". The United States of America has and does exercise rights and jurisdiction over portions of the continental shelf to the seaward edge thereof, extending beyond the boundaries of the several states. (See U.S. v. States of Louisiana, Texas, Mississippi, Alabama and Florida, 81 S. Ct. 258, 364 U.S. 502, 5 L. Ed. 2d 247; Sections 1302, 1311 and 1312, title 43, U.S.C.A.; and 34 Fla. Jur., Waters and Water Courses, §154.)

Under the heading "International Law", §7 in 48 C.J.S., we find the following—"From earliest times it has been conceded that the sovereignty of nations bordering on the sea does not stop at the shore, but that for some distance at least it extends over

and under the ocean. Ordinarily the territory of a nation extends into the sea, a marine league from its coastline; * * * ."

At page 181, 17 C.J.S., under the heading "Continental", in defining that term it is stated—"A generic term in general and prevalent use, and defined as meaning pertaining to or characteristic of a continent". Essentially the same definition appears in Black's Law Dictionary, Fourth Edition.

It is apparent from the foregoing that the term "continental limits" obviously means different things at different times in different places and in different contexts. The several conflicting definitions are not helpful. It might be argued that the continental limits ends with the shoreline or that it extends to the edge of the continental shelf; or that it is most any place between those points. If we apply the boundary established for the state of Florida by the Florida constitution as being the continental limits of the United States, the limits would end, at least as to the east coast of Florida, at the coast line. All of the parties to this cause conceded that such was not the intent of either the insuror or the insured when the subject policy of insurance was issued.

It is common knowledge that in the present era in which boats —from row boats to seagoing yachts—have replaced the automobile as a status symbol, every weekend finds literally hundreds of small boats, which are usually transported over land by trailer, plying the waters off the coasts of the coastal states of America at varying distances from 50 yards to 50 miles. The vast majority of these modern day seamen would evince shock and disbelief if they were told that they were beyond the "limits of the continental United States". To so construe their many policies of insurance would be to effect a forfeiture of a great percentage of the policies written on small craft throughout this state. Lest it be urged that the boat involved in the accident giving rise to this controversy should be placed in another class by virtue of the fact that it had been to a possession of a foreign nation and was en route home at the time of the accident, it should be noted that though coverage may have ceased as a result of the voyage beyond the prescribed limitation, it again attached upon again returning to the insured area. (See Appleman, Insurance Law and Practice, vol. 5, §3255 and cases there cited.) As before pointed out, the uncontradicted affidavit of the plaintiff alleges that the accident occurred closer to the United States than to the Bahamas.

If the foregoing discussion does nothing more, it clearly demonstrates the ambiguity of the phrase or term "within the limits of the continental United States of America". The law is well settled that an ambiguity in a policy of insurance must be con-

strued most favorably to the insured and most strictly against a forfeiture. Appleman in his Insurance Law and Practice, vol. 13, §7468, states—

"* * * As in other policies, marine contracts are strictly construed against the insurer and favorably to the insured, and where two interpretations are possible, that which will indemnify the insured will be adopted. Any ambiguity in the policy will be resolved against the company. * * *

"Any construction of a marine policy rendering it void should be evaded. * * * If a marine insurance company desires to limit or restrict the operation of the general provisions of its contract by special proviso, exception, or exemption, it should express such limitation in clear and unmistakable language. * * * And where restrictive provisions are open to two interpretations, that which is most favorable to the insured is adopted."

Had the insurance company whose scrivener prepared the subject policy of insurance desired to restrict the coverage to an area within 3 miles of the coast of the United States or within any other prescribed area it would have been a simple matter to have so stated.

Therefore in view of the foregoing, and without any guide furnished by any state appellate court or any federal court of the United States, this court construes the term "within the limits of the continental United States of America", as used in insurance policies, when not therein defined—particularly the policy involved in this controversy—to mean and include not only the land surface within the boundaries of the several states of the United States and the District of Columbia, but also the rivers, canals, and lakes, which water the land, and, in the case of a state with a sea coast, the gulfs, bays and straits of the sea and the soil forming the continental shelf extending under the sea, to the seaward edge thereof, and the waters above that shelf; except where such boundary has been determined or confined by treaty or international agreement. In locations in which the continental shelf extends for a distance under the sea and then appears above the water to form an island or body of land, and where that island or body of land is a sovereign nation or a possession of a sovereign nation, then the boundary would be, instead of the seaward edge of the continental shelf, the halfway point between the closest coast of the United States and the closest coast of the sovereign nation or possession thereof.

In view of the foregoing, the court finds that the subject accident occurred within the limits of the continental United States,

as above defined, within the contemplation and meaning of that term as used in the policy of insurance furnished by the defendant to the plaintiff.

The next point pertains to the plaintiff's damages. The limits of the insurance coverage, as revealed by the policy attached to the complaint, is $2,100 on the boat and $900 on the motor. There is a $100 deductible clause. The affidavit alleges the value of the motor and attachments was $1,019 at the time of the accident, and further that as to that item there was a total loss without salvage value. The boat is alleged to have been valued at $2,450 before the accident and $800 after the accident. Depreciation of the boat in the sum of $1,650, when added to the maximum coverage afforded to the motor of $900, gives a sum of $2,550, which when reduced by the deductible of $100 reveals a total loss covered by the policy of $2,450.

The law, F.S. 627.0127, imposes upon the judge the duty of determining and awarding a reasonable fee for the insurer's attorney in cases of this nature.

A summary final judgment will be entered herein in favor of the plaintiff and against the defendant for $2,450, plus interest, attorney fees and costs.